Irving Wenig v. Commissioner.
Wenig v. Commissioner
Docket No. 9857.
United States Tax Court
1947 Tax Ct. Memo LEXIS 5; 6 T.C.M. (CCH) 1340; T.C.M. (RIA) 47338; December 26, 1947
*5 On the evidence, held, petitioner and his wife were not engaged in business in the taxable year as a partnership recognizable for tax purposes and the profits of the business were taxable to petitioner. Bernard J. Long, Esq., for the petitioner. J. Frost Walker, Jr., Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The respondent determined a deficiency of $30,193.03 in income tax of the petitioner for the fiscal year ended January 31, 1942. The petitioner contests the action of the respondent in including as income to petitioner the share allocated to his wife, Ruth Wenig, of the net profits of D. & W. Metal Products Company, alleging that a partnership existed between petitioner and his wife. Findings of Fact The petitioner is an individual, with office at 230 Manida Street, New York, New York. He filed his income tax return for the fiscal year ended January 31, 1942, with the collector of internal revenue at 110 East 45th Street, New York, New York. The petitioner came to the United States from Austria in 1921 at the age of 20. He attended night school for about two years and was employed in various occupations. *6 He and his wife, Ruth Wenig, were married July 2, 1927. At that time he was employed as foreman for the United Metal Box Co., at compensation of $55 a week. Ruth Wenig was 20 years of age at the time of their marriage, was a high school graduate and was employed as a billing clerk with a cotton converting concern. They have two sons born about 1929 and 1930. In order to help the petitioner go into business for himself, Ruth Wenig gave him her engagement ring to pawn. The petitioner borrowed $350 on the ring and bought some second-hand machines which he and his wife repaired. At about the end of 1927 he gave up his employment and went into business with a partner, Joseph DiBianco, in manufacturing metal products. Within a year DiBianco left the business and the petitioner continued with it alone. Ruth Wenig obtained employment as a bookkeeper and sales clerk from about 1927 or 1928 to about 1930, devoting her earnings to paying the living expenses. Until about 1930 Ruth Wenig did clerical work, billing and bookkeeping for the business in the evenings. In about 1931 or 1932 petitioner and one Williams formed a partnership and incorporated the business under the name of D. & W. Metal *7 Works, Inc. In 1932 or 1933 the petitioner bought out Williams' interest for $200 in cash advanced by his wife and $1,000 in trade. In 1933 an insurance company brought action against the corporation for an unpaid bill and obtained judgment and execution by virtue of which a marshal of the City of New York on June 8, 1933, sold the property of the corporation for $52.50. The petitioner bought it from the purchaser at the sale for $100 advanced by his wife. The business was not thereafter carried on as a corporation. In 1937 the petitioner erected a building in which the business was thereafter carried on. Title to this property was taken in the petitioner's name and so remained in the taxable year. In September 1937 the petitioner and his wife had an attorney prepare a partnership agreement purporting to be effective as of February 1, 1937, and a certificate to the effect that the petitioner and his wife were doing business under the assumed name of D. & W. Metal Products Co. These documents were never executed. In about 1935 the petitioner sought a loan from a bank and informed the bank's representative that his wife was in the business on a partnership basis. The bank requested, *8 and Ruth Wenig signed, a guaranty from her of any loans made in the name of D. & W. Metal Products Co. On April 7, 1941, she signed a similar guaranty. She was not authorized to draw checks on the bank account of the business before April 1941. The principal product of the business was a metal radiator cover sold to home owners or dealers for showrooms or homes. The petitioner found that this product could not compete successfully with a wooden cover sold for a much lower price. In the latter part of 1935 or in 1936 Ruth Wenig devised a type of grille which could be stamped out of a sheet of metal and which eliminated the costs of welding and installing purchased grilles and of keeping a supply of grilles on hand. The selling price of the product was reduced and large quantities were thereafter sold to realtors and building contractors. In 1938 the manufacture of undersink cabinets was commenced. Ruth Wenig suggested improvements in the design of this product, advising that the space be covered to the floor and that a shelf and towel bar and a removable tray be installed. These improvements were incorporated in the cabinet and a substantial volume of such cabinets were made and *9 sold. Ruth Wenig also suggested an improvement in the painting process through the use of a stream of water to remove paint fumes from the painting room. The sales of radiator covers and undersink cabinets and the net profit of the business for the fiscal years ended January 31, 1933 to 1942, inclusive, were: Fiscal Year
ended
Radiator
Undersink
January 31
Enclosures
Cabinets
Net Profit
1933
$ 37,571.57
$ 1,134.00
1934
30,305.02
9,328.36
1935
35,566.35
7,091.58
1936
50,691.26
7,469.56
1937
105,579.46
18,375.32
1938
158,987.69
32,469.22
1939
154,581.89
$ 29,978.26
19,531.74
1940
222,515.39
93,670.51
42,376.33
1941
227,722.00
129,624.28
54,096.86
1942
279,520.53
197,473.75
119,786.52
On February 1, 1941, the petitioner as First Party and his wife as Second Party, executed an agreement, reciting in part: "* * * it is mutually agreed as follows: "(1) That the Parties hereto shall, as partners, engage in and conduct the business of manufacturing Metal Radiator Covers and any and all other Metal Products manufactured by D. & W. Metal Products Co. * * *
"(3) That the terms of the Partnership shall *10 begin as of February 1, 1941, and shall continue for a period of two years, and shall be renewable. * * *
"(5) That the capital of the Partnership shall be the present assets of the D. & W. Metal Products Co. It hereby being declared that as of February 1, 1941, the parties hereto are each the owners of an undivided one-half interest in and to the said business. The First Party having transferred to the Second Party, as of February 1, 1941, an undivided one-half interest in and to the said business. That the consideration for the aforesaid transfer by the First Party to the Second Party is the love and affection borne by the First Party to the Second Party, and other mutual interests. That neither party's contribution shall bear interest in their respective favors. * * *
"(8) That each Party shall be entitled to draw from the funds of said Partnership, such funds as are specifically agreed upon between them from time to time, but nevertheless in equal amounts. "(9) * * * (b) That the net profits or net losses shall be divided equally between the Parties hereto and the amount of each shall be credited or debited, as the case may be, with his or her proportionate share *11 thereof." "The balance sheet as of January 31, 1941, of the D. & W. Metal Products Co., Irving Wenig, Proprietor, showed assets of $148,130.92, liabilities of $57,052.23 and capital of Irving Wenig of $91,078.19. No capital account was shown in the name of Ruth Wenig. The balance sheet as of February 1, 1941, of D. & W. Metal Products Co., showing Irving Wenig and Ruth Wenig as partners, shows the same assets and liabilities, but the capital account is shown as Irving Wenig, $67,392.45 and Ruth Wenig, $23,686.24. The net profit of the business for the taxable year (February 1, 1941, to January 31, 1942) was $119,786.52. Of this, $78,592.02 was credited to the petitioner's capital account and $41,194.50 was credited to the capital account in the name of Ruth Wenig. The petitioner filed individual income tax returns for the fiscal year ended January 31, 1934, and each subsequent fiscal year through the year January 31, 1941, in which he reported all the net profits of the business as his income. For the fiscal year ended January 31, 1942, the petitioner filed a partnership return of income showing himself and his wife as partners. Employer's Tax Returns were filed showing the *12 petitioner as owner or proprietor of the business through the third quarter of 1942. The return for the fourth quarter of 1942 was signed by the petitioner as partner. The net profit of the business conducted by the petitioner under the name of D. & W. Metal Products Co., for the taxable year constituted income taxable to the petitioner. Opinion The issue is whether the portion of the profits of the business carried on under the name of D. & W. Metal Products Co., credited to the petitioner's wife for the fiscal year ended January 31, 1942, is income taxable to the petitioner. The original petition alleged the formation on February 1, 1941, of a partnership between the petitioner and his wife whereby they were to share in the profits of the business in accordance with certain articles of copartnership and under which the net profits for the fiscal year ended January 31, 1942, were credited to their respective capital accounts. Subsequent to the filing of the petition and answer the Supreme Court of the United States, on February 25, 1946, rendered its decisions in the cases of , and , *13 holding that the income of certain husband and wife partnerships was, under somewhat similar circumstances, taxable to the husband. Thereafter, on April 7, 1947, the petitioner filed an amended petition alleging that in 1933 he and his wife, Ruth Wenig, agreed orally that thereafter they would be partners in the business previously conducted by him; that Ruth Wenig furnished the capital to start the business and contributed substantial and vital services; and that a written agreement of partnership was executed on or about February 1, 1941. Evidence introduced at the hearing was directed toward showing the partnership originated long prior to the execution of the written agreement. The agreement of February 1, 1941, does not purport to evidence a pre-existing partnership but to establish a new partnership originating on that date in which Ruth Wenig was receiving an interest by contemporaneous gift from the petitioner. It was in all essential respects similar to the agreements involved in the Tower and Lusthaus cases, supra, and the issue, we think, would be controlled by those decisions if this agreement and the conduct of the petitioner and his wife under it were the petitioner's *14 sole reliance. The petitioner, however, is now contending that the prior history of the business and the contributions of money and services made by his wife demonstrate that a partnership between them existed from about 1933. If a partnership formed by a husband and wife is to be recognized as a basis for dividing the income of a business between them for purposes of Federal income tax, it must be shown that each party invested capital originating with that party or substantially contributed to the control and management or otherwise performed services of a vital nature. ; The petitioner contends that on three occasions Ruth Wenig made contributions of capital originating with her. In 1927 she offered the petitioner her engagement ring which he pawned for $350 with which he started in business. Later she advanced him $200 with which to buy out Williams and in 1933 advanced $100 or more with which to buy back the assets following the sale on execution. The circumstances under which these advances were made, however, do not indicate that they were intended as investments in the business as a partner, *15 but rather that they were loans or gifts to the petitioner, at first to enable him to start a business of his own and later to save it for him. See , affd., . Had Ruth Wenig been a partner originally she would have been a stockholder in the corporation formed by the petitioner and Williams, or if the funds used to buy out Williams' interest were intended as an investment she would have received Williams' stock or other stock in the corporation. There is no sufficient showing that any of these advances represented investments by Ruth Wenig of capital originating with her in the business conducted by the petitioner. The petitioner's wife did perform some services in the business for a time after its inception, but these were plainly not in the capacity of a partner. She helped repair the first machines, and did billing and bookkeeping in the evenings after her day's work in another business. These services ceased in 1930 when she left her outside employment and had small children to care for at home. It is not shown that she performed regular services in the business after 1930 in any capacity. The petitioner stresses *16 the services of his wife in devising manufacturing procedures or designing products as being services performed in a managerial capacity or other vital services, thus showing her to have been a partner. The chief product of the business was a metal radiator cover sold to dealers for homes and showrooms. The product could not compete successfully with a wooden radiator cover. Ruth Wenig devised a method of making a cover with a grille punched out of a sheet of metal with a die. This eliminated cutting and welding and reduced the cost of making the covers, thus making it possible to sell them to real estate concerns building homes and increased the sales volume enormously. In 1938, when the manufacture of metal undersink cabinets was commenced Ruth Wenig gave her opinion that this product would be improved if it were covered to the floor, a shelf and removable tray were installed and a towel bar placed inside the door. Her suggestions were followed and the sale of this product became an important part of the gross sales, as shown in the findings of fact. More recently she suggested improvements in the method of painting the products by passing water through the painting room. We think *17 these services of Ruth Wenig were not managerial, nor were they other vital services of the character of a partner's services to a partnership. She was obviously interested in the success of the business, as it provided the livelihood of the family. She volunteered her ideas and personal help at times to promote the business. The fact that some of these ideas may have led to the success of the enterprise does not mark her contribution as that of a partner. Ideas of employees or friends may often be the source of substantial profit to the owner of a business, but do not thereby make the one suggesting them partners of the owner. The issue is - who earned the income of this business? This depends upon whether the petitioner and his wife really intended to carry on this business as partners. The petitioner says that they agreed in 1933 to be partners. There was some talk in 1933 of a partnership, but it was as something to be arranged in the future. A significant fact in ascertaining their intentions is the action they took in 1937 with respect to a formal partnership. They had an agreement drawn up by their counsel, together with a certificate *18 of doing business under an assumed name, but they did not sign these documents. The petitioner testified that in 1937 his wife insisted and he agreed that they become legal partners, so they had an attorney draw an agreement, that he decided to build his own factory and the cost of this impaired his financial position, that the agreement was not signed because he feared it would hurt his credit and that the business continued as before until 1941 when the factory was free and clear "and we had enough capital to be on our own, and then Mrs. Wenig and I * * * decided that * * * we could have our partnership without fearing any creditor, and at that time we became legal partners." The petitioner introduced evidence showing that Ruth Wenig earlier had signed a guaranty to a bank to induce it to extend credit to the company and testimony of an assistant vicepresident of the bank to the effect that prior to 1937 the petitioner said his wife was in the business on a partnership basis and on that account the guaranty was obtained. It would in no way injure his credit to admit that his wife was his partner and he had already asked for and obtained credit on the strength of representations which *19 included such a statement and her guaranty. The failure to execute the formal agreement was obviously due to the fact that the petitioner was not doing and did not intend to do business in partnership with his wife at that time. The arrangement was considered in 1937 but was then rejected, or at least deferred. Another significant fact is that out of the profits of the business, the petitioner purchased certain lots and in 1937 constructed a building for carrying on the business. Title to this property was taken in the petitioner's name and continued in his name during the taxable year. If Ruth Wenig had been a partner she would have had a right to joint ownership of this property purchased with proceeds of the business. Furthermore, until the taxable year Ruth Wenig had no capital interest on the books of the business, although an accountant had charge of the books. She had no drawing account and no checking authority until the taxable year. The capital account set up in her name as of February 1, 1941, constituted a gift from the petitioner. The instrument then executed recites that the petitioner transferred as of that date an undivided one-half interest in and to the business in *20 consideration of love and affection and other mutual interests. The petitioner cites in support of his contentions the cases of ; ; ; and . In the Marks case, the wife devoted her full time for over 20 years to managing a jewelry department connected with her husband's optical business. Her services were continuous and valuable and she made an original capital contribution of her own funds. In the German case the wife performed valuable services continuously from 1924 to 1930 and less actively thereafter, both husband and wife exercised equal control in the business, the checking account was joint and title to all real property in the business as well as title to their home was taken in both their names. In the Zukaitis case the wife contributed $1,500, or half the original capital prior to their marriage, and worked long hours in the business for many years before and after their marriage, exercising managerial responsibilities. In the Ennis case the wife contributed original capital to pay off a loan and worked for many *21 years in the business without compensation. We think these cases are distinguishable from the case before us. While some services were performed by Ruth Wenig early in the business they were at times which would not interfere with her regular employment and they ceased in 1930. All her services appear to have been occasional, rather than regular, and not of a managerial or vital nature. They were rendered as a volunteer rather than as a participating partner. The case more nearly resembles ; or , affirming a Tax Court memorandum opinion. Each case of a family partnership turns on its own facts. We conclude from the facts and circumstances of record that the petitioner and his wife were not doing business during the taxable year as a partnership recognizable for income tax purposes. Accordingly, we hold that the profits of the business conducted by the petitioner in the taxable year were income taxable to him. Decision will be entered for the respondent.